All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the Second District is now open for suit to adjournment. The Honorable Michael J. Burke presiding. Please proceed. Your Honor, as the first case of the morning, we call 2-13-577 Lyons Electric v. USIC Locating Services. On behalf of the Appellant, Mr. Joseph T. Buell. On behalf of the Appellee, Ms. Carly Brandenburg. Thank you, Mr. Buell. You may proceed. Good morning, Your Honors. Joseph Buell here on behalf of the Appellant. May it please the Court, counsel. The Appellant will stand on its argument in its briefs regarding the Rule 304A finding that was entered by the Court, the dispelling and dismissal of count one of the amended third party complaint with prejudice. And this review in court applies a de novo standard of review concerning the circuit court's dismissal of count one of the amended third party complaint pursuant to section 2-615. And you agree that the 304A language, that's an abuse of discretion? It is. The Appellant will have to just stand on its brief on that particular issue. The issue that we're here before this court on is whether USIC is subject to liability and tort within the meaning of section 2 of the Contribution Act for AT&T's damages, where AT&T has a cause of action for negligent misrepresentation against USIC, which is not barred by the Mormon Doctrine. And the determining- I'm sorry, it's not barred by the Mormon Doctrine? It's not barred by the Mormon Doctrine. The determining factor that the negligent misrepresentation exception applies is that USIC is a pure information provider. Now, the Mormon Doctrine bars recovery and tort for purely economic losses, but the exception is the negligent misrepresentation exception. And that applies when a plaintiff's damages are caused by negligent misrepresentation by a defendant in the business of supplying information for the use of others in their business transactions. Are you relying on the exception, or are you- does the Mormon Doctrine apply in the first instance? I'm relying on the exception. Okay, so I mean you are conceding that the Mormon Doctrine would apply to a contribution claim? Well, the Mormon Doctrine would apply, but the exception- bars the application of the doctrine based on the negligent misrepresentation exception. Okay, because Cerullo's disagrees with you. I mean, there's some broad language in Cerullo's that says that Mormon doesn't even apply to a contribution claim. Well, Mormon doesn't bar a contribution claim. I think that's what they're saying. But what we're here on the issue is,  is that if a client has negligent misrepresentation, the contribution action remains or stays. The issue is, they're arguing that they can only be subject to liability and contract. And the question that arises is, if it comes within the exception, the negligent misrepresentation exception, because they're a pure information provider, AT&T can sue them for their damages for their economic loss. Are they a pure information provider? They are. And the reason that they are, they do not provide documents, objects into which their ideas are incorporated. They strictly provide information, and it's analytical information, as to where their underground utility facilities are located. And I think if we- That's not really analytical information, is it? That's just kind of location. Well, it's analytical because the decision has to be made by the locator where the facilities are. The locator has to make the decision. Where are the facilities? That's the analytical. Well, you'd run a magnetometer or whatever over the ground, and there's a cable or there's a wire or there's a conduit or whatever it is. But that is a decision that's made in the mind of the locator as to where it is or where it is not located, where the facility is or is not located. They have to make that decision when they're out in the field. And they do that as a mind process, that they're using a device to locate it. They have to determine whether, in fact, it's in that location by the use of that device. But they make that determination analytically. Are you arguing that they're more like attorneys and accountants than architects? They are. Because an architect, he puts his ideas into drawings. An engineer puts his ideas into drawings. They're more like an attorney. They're more like an accountant. Because they're dealing with ideas in order to achieve the result that they want to determine where the location is. So they're not producing a tangible result like an architect. No, they're not. Even though they're running their machine as just dispensers over the ground and put a flag there, that's not tangible. That's an idea. That's an idea. I mean, they draw these lines on the sidewalk. We see it every day, and flags in the grass. That's not tangible. That's the culmination of their idea. They have to have the idea where is it located, and they use means to locate it. But in order to do that, it's in their mindset. They're looking for certain things. The machine may tell them certain things. They may know that, based on their experience, that maybe it's not where the machine may indicate it is. They may have to go to the left, go to the right. You're kind of scaring me that these people out there exercising their judgment before people are digging up my yard. Well, it's completely different. You go to an architect. You want some building plans. He puts his ideas into the plans, and you get a document. This, you have to make the decision. It's the same way like the accountant and the lawyer. There are times it's analytical decisions, analytical ideas, and this is what they're doing. That's what differentiates them. Wasn't that a purely contractual obligation by USIC? The thing is, it may be contractual to the extent that they hire them to do it, but the ideas come about when they go out to the site. So they become discretionary when they go out. Right. In other words, they have significant decisions to make and final decisions to make. The fact that there may be a final decision, where is the facility located, that is something that isn't covered by the contract. It may be extraneous to the contract because they have to make the decision while they're in the field. But then you can say that pretty much about any contractual obligation. They're going to make the final decision. Would it be any different for anything? I mean, why does the Midwest case carve out certain and explain certain areas which are exceptions? Well, they do define exceptions, such as termite inspection report. And this comes within the same process. It's an idea. It's an analytical idea versus a document. In a lot of the cases that they cite in their briefs, they resulted in some type of a document or some type of a tangible good. And that's the distinction. The analytical information. And in the Midwest case, they talked about analytical work. OK, it's not a document. It's not ideas incorporated into that document. How much analysis, though, is going into, OK, there is a cable underground here. My machine tells me it's within six inches either way. OK, here's where the flag goes. That doesn't sound like a whole lot of analysis. A robot could do it. And in the future, we probably will have, you know, robotic whatever. It just doesn't. It is because it's a decision. They have to make a decision. The machine may indicate something, but that doesn't mean that that machine is accurate or correct. They have to then make the decision in their mind, am I going to place this here? Because the purpose of putting it there is to provide the information as to where the facilities are. And you have to remember the app talks about the threefold purpose of the app. Protect persons and property, preserve utility services, and prevent negligent and unsafe excavation operations. What they do is they have these ideas, their analytical ideas, and it ultimately results in the culmination of either marks or flags to indicate where those particular facilities are. This exception seems to have grown up around the idea of a person not having any remedy, basically, like the termite inspector, the survey. You know, a party goes in, the seller hires the termite inspector, and they buy this house. Termite inspector says no termites, and then the buyer buys the house in reliance on that report that they didn't have a contract with. And then they have no remedy. If you strictly apply the Mormon doctrine, they have no remedy. So it seemed like that exception grew up around that. Then it starts morphing into an extra contractual duty even between the parties, which is what we're talking about here now with Congregation of the Passion and attorneys, and it just seems like it's morphing into something that maybe it wasn't supposed to have morphed into, this exception. But I think the fact is we do have the exception. And if it comes within the process that these are analytical versus ideas that are incorporated into a product or document, there's a big difference between the analytical ideas. And that's what we're dealing with here. We're not dealing here with a document where somebody says, here's a document, here's some plans, we're dealing with analytical ideas. And I think that that's where the distinction is made. You wouldn't even need the exception if the Supreme Court followed Heitl's dissent and strictly limited Mormon. I guess we don't have that. But we don't have that. But what we do have, I think that it comes within the exception, the negligence representation exception, based upon what we have and what we know about what they do as far as what the analytical work is that they do. The amended third party complaint, USIC did not file an answer to that? No, the amended third party complaint, USIC, did file an answer to count two. And count one and count two allege the same theories, negligence representation, based upon the information provider exception. And I think that with respect to count two, the court understood, based on its analysis, that there is a duty. And the court based that analysis on count two, which is based on economic loss, that in the court's analysis with respect to count two, where the court indicated that there may be a duty and they have reason to believe that others will rely upon the markings to dig or to excavate. So as far as count two, the court understood that there was a duty here. And count two is premised on negligence representation. It's the same cause of action that AT&T would be able to bring against USIC to recover their economic loss. And I think that, you know, we have to understand, too, that there's duties that are imposed by, it's a common law duty that's imposed upon the locators, the information providers that comes within the scope of the negligence representation exception. You do agree that the Contribution Act applies to this, correct? I agree the Contribution Act applies. And my argument is the Contribution Act should not have been dismissed by the court. Because of the information provider exception. Because of the information exception. I've asked you this before, and I just really want to clarify this, because I thought in your brief you were arguing the language from Cerullo's that Mormon speaks only to the Contribution Act. And so it has no, Mormon has no application. I think that's what Cerullo's, without much analysis, that's what Cerullo said. Are you, are you abandoning that argument? No, I, the position that we had, and it's in the record, is that we had multiple, we had at least two other cases. And they're all being briefed concurrently. And another judge, Judge Orell, made his decision. He based his decision that a contribution action was a viable action based on Cerullo's. And it was because of the argument, their argument is we can only be sued in contract. We cannot be sued in tort. He's the one that filed the Cerullo case. And he's the one that based his reasoning on the denying their motion to dismiss the claim in that other case. So what happened is we get into this issue where we're arguing the contract, but we really need to focus on the issue of the negligent misrepresentation before we even get into that issue with Cerullo. And this is what we have. We have negligent misrepresentation with a pure information provider. And as a result of that, you can sue under the exception, the negligent misrepresentation, you can sue for your damages. And in this case, because it is an exception, AT&T can sue USIC for their damages under negligent misrepresentation. They could also sue if they want to in contract as well. And I think we put that in the brief. They've got two remedies, either in tort or in contract. But the exception is triggered that gives them the opportunity to file a sue. And this dispute or disagreement or murky water, if you will, between some of the judges was one of the reasons that Judge Leston gave you the 304A language. Is that correct? Yes, because he indicated, he says, I think that this is a question of law. And he basically wants the appellate court to consider the issue. Wouldn't there be another way to do that? I know you're standing on your argument. But I mean, certifying the question, wouldn't that have been another way? That probably would have been another way if the court certified it by 308. That would have been another way to do it. But because the court did grant it by 304 language, we're here today. But the court's concern at that point was at the time that the court felt that this was more of a question of law to be decided by the appellate court. Thank you. Thank you, Counselor. We will have time for questions. Ms. Brandenburg, you may proceed. May I please report, Counsel, Carly Brandenburg on behalf of USIC. I think your honors questions really leads us right into the meat of this issue, which is, should this be a situation where USIC's relationship with AT&T is governed by contract? And that is our thrust here, that we believe that. Before we get there, let's talk about 304A. Because Counsel stood on his brief, but he's arguing in the brief that 304A language was inappropriate in this case. You know, whether it was appropriate or inappropriate, do you believe that the court's reasoning for sending the case here is along the lines of the factors that the court's supposed to consider? I do believe that it is. And I do not believe that Judge Leston abused his discretion in providing the 304A language here at all. And just because the judge, in addition to reviewing the briefs of the parties, which we had, of course, briefed and responded and had a reply brief as well on the 304A issue, dealing with many of the issues as addressed in the Geier case and other cases regarding finality and other issues of consideration in the 304A analysis, what Judge Leston expressed to us then in court, I think, was in addition to his reading and his understanding of the cases. Where do you get that, though? Because he doesn't say that. If he would have said something like, I consider the Geier factors. And I also really would like to have this question answered. That'd be one thing. But the court never said anything about one factor that I read in the transcript. And I'm not saying the court didn't read your briefs. I'm just saying the court never said anything. I find this to be, at least looking at it, perhaps analogous to a criminal sentencing hearing where a judge, you know, if the judge says nothing and just says, you know, I think an appropriate sentence is six years. And then the defendant can't really complain that that's an abuse of discretion because there's nothing in the record to show that the judge considered an improper factor in aggravation. This is similar. And if the judge has said, you know, I've considered this, and I think 304A language is appropriate, then it's a very difficult burden for your opponent to come in here and say that's an abuse of discretion. But when there's something in the record that shows that perhaps the court considered an improper factor, or maybe that was the only factor the court considered, then maybe he's not as burdened to show that the court acted arbitrarily. Your Honor, I see your point. But I think that the arguments presented even before the court that are in the record regarding the 304 analysis during that May hearing dealt with the important issues. And the court certainly listened to them. And the fact that he expressed his overarching desire to see a case that's been, that our clients have, frankly, been living on a day-to-day basis week after week in a variety of courts, both in Cook County and DuPage County and in Will County, I think that that in no way makes his decision to provide the 304A language fanciful or arbitrary. And I think when we look at truly what's at issue here, count two. You're saying for judicial economy, whether he did 304A or 308, we should address the issues that are before the court. Absolutely, Your Honor. And when we consider what's at issue in count two, which is the only count that remains pending, which is essentially an under $1,700 damages claim for economic losses of Lyons and Pinner, not the issue of whether or not USIC should have to contribute to whatever Lyons and Pinner may have to pay to AT&T on an over $150,000 claim that AT&T has maintained, is an entirely separate issue that, frankly, could probably be bifurcated from the trial of AT&T's matter. It's separate damages. It's a separate party that's seeking damages. It's a separate and distinct claim because the analysis of what it would take for USIC to be liable in that count two that remains pending is wholly different from whether or not USIC should be liable in contribution to help Lyons and Pinner pay whatever share it may owe. The damages may be different, but the facts underlying the digging and the marking and all that is exactly the same. That's true. There's significant factual overlap in this case. And isn't that something that the Supreme Court has looked at? There is. There is significant factual overlap. But as Gaia recognizes, one of the most important factors that can trump even a situation where you might have the potential for mootness is the potential catalytic effect on settlement. And I think that that was a central focus both of the briefs and in our arguments to Judge Leston during the May hearing, which was that USIC is being essentially drug along on a small claim because Lyons and Pinner would like to have that additional pocket book in the equation for the larger matter. This is not an appropriate situation to keep USIC in the mix on what should be a small claim for that purpose. And having resolution of whether or not USIC can be liable in contribution with Lyons and Pinner to AT&T is going to have a tremendously catalytic effect on the potential for settlement both of AT&T's underlying claim against Lyons and Pinner and on the count two pending between Lyons and Pinner and USIC for the $1,700. So in summary on that point, I really do believe that Judge Leston's opinion was not in any way arbitrary or fanciful and that he did not abuse his discretion. But I do want to turn to the de novo question of law, which is really a very important one for our clients. As I stated, this is something that Mr. Buell and I and frankly with other attorneys for other excavators we've been dealing with in court after court. And I think that, Justice Berg, your question regarding really the purpose of the Mormon doctrine should be central to the analysis. And if we look at Mormon's purpose, which I think initially came about to create a situation where we could avoid having tort law start eating into the land of contract and essentially Mormon saying, look, if we have certain kinds of damages and damages that should be covered by a contract, we're not going to let parties recover unless they have a contract. And that, of course, can lead to some harsh and some unfair results and circumstances, which if you don't have a contract would allow exceptions to come into play. But where you have the contract, there's no need for the exception. No one here is disputing. And Lyons and Pinner are saying that even in any circumstances, under any circumstances, the exceptions do not come into play because you have a contract. I believe that that is the point that's been recognized through the Ferenczak versus Village of Franklin cases and through the Illinois Bell versus Plotie and the Falwell public service cases because those involved, and particularly when you look at Illinois Bell, that involved a situation where an excavator could bring a claim for economic losses against a utility because the utility had a statutory obligation to mark its underground facilities and there was no contract. And the court specifically articulated in recognizing the importance of contracts in the equation that its goal is to protect the integrity, and I'm quoting here, protect the integrity of contract law and force plaintiffs whose damages in essence equal their commercial expectation to sue on the bargain floor agreement. But in that circumstance where there was no contract, we essentially had a circumstance where the legislatures created a statute that will have no teeth if we don't provide a recourse for the economic damages to be met. And incidentally, that action in section 9 also creates a tort cause of action. So we would essentially be rendering a statute meaningless. But USIC is not an owner and operator of underground facilities, and it doesn't have a statute like that that applies to them. Our duties are created, USIC's duties are created by the contract that it has entered into with USIC. And that's an important relationship that USIC believes deserves, it's significant and deserves respect in contract law. It's the purpose of being of the contract. This isn't a circumstance like Congregation of the Passion versus Tushin Ross where you have a contractual duty that's been violated and the court saying, look, we don't want to let professionals limit liability to the four corners of the contract. Because when you have an accountant or a lawyer and they're providing important services, there's a tremendous, I think, risk to the customers of losing, you know, having injustice. So this is what you're saying then the exception applies, can apply when there is a contract and it has to be a pure information provider? No, I believe in a situation where you have a contract like we have here, there's no circumstance where AT&T can't, AT&T could bring a contract action right now against USIC. Yeah, but you're saying that even if you have a pure information provider and you have a contract, they still can't proceed other than through the contract? Right, and I believe that under Fair and Check versus Village of Frankfurt, which was affirmed in part and reversed in part on other grounds by the Supreme Court, the statement that economic losses are not recoverable in tort against a defendant where the injuries caused by the defendant relate directly to plaintiff's reasonable commercial expectations regarding the defendant's actions and where the plaintiff has or had appropriate and adequate contract or warranty actions. By the same token, the same economic losses can be recoverable in tort where the injuries are caused and against whom no contract or warranty is available. That's really the issue we have here. We have a contract that gives AT&T the ability to obtain complete relief. In Congregation of Passion, that plaintiff did not. Correct. Because there was nothing in the contract or there was no duty that was breached that was specifically contained within the contract. Exactly, it was an extra contractual duty and that's because the courts didn't want to limit to the four corners of the contract what professionals like that can do. It's, you know, I'm going to do X service for you and absolutely no more as your lawyer. That's frankly probably a little bit frightening. So I think that it makes sense why the lines have been drawn where they've been drawn. The other possibility, and we see this in Cirillo's, is that there's, and it's a lot like Congregation where you have an extra contractual obligation, but it's one that's been created by statute. And frankly, initially on Cirillo's, I think the analysis was very similar to where it was here, where you have a bank that has a contract with its customer and the underlying court, the trial court, had said, look, you've got a contract, the contract should govern so you don't have tort ability. But the court of appeals said, but hey, what about the UCC? The UCC creates an obligation for banks to only pay those notes that are properly payable. And that's an important safety feature that the UCC creates where banks have an obligation to protect their customers and ensure that they're only paying those notes that are properly payable. So when they fail to recognize a forger scheme and they pay a note that isn't properly payable, they have essentially breached an extra contractual duty that's been created by a statute. Have you seen any cases where there's been a specific, a specific contractual cognizable cause of action and also a tort cause of action that's been allowed? I've, I've seen in some of the cases, situations where you have a contract, but you also have the ability to pursue and tort because of an extra contractual obligation that's been breached, but not where. Not as a result of an exception? No, I don't think so. I, I, where you have a situation like this one, where the point of the contract and the only allegation against USAC is that we failed to mark appropriately. And that is the purpose for being of USAC's contract with AT&T. So of course, if USAC goes out and puts marks on the ground and does something wrong, according to its contractual specifications, obviously the foreseeable, the clear, the obvious damage is that AT&T's facilities could be harmed. Now, if AT&T. But your opponent is saying that that was, that was as a result of providing information to AT&T and they failed in, in providing the correct information as a result, it's an exception. They're outside of that contract. Right. Which I, I still believe that the exception only comes into play in a circumstance where you have injustice from the lack of contractual obligation in the first place. But if you do believe that the information provider exception can stand within the confines of a contractual relationship, I would certainly argue that USAC is more likened to, you know, I would even, it's difficult to even go so far as to say an architect, but you can draw similarities there where an architect is creating a plan that it's, the architect's never creating something tangible. It's not building the building. USAC is basically putting a map on the ground that others are using to create what they're going to create, whether it be a road project or building or what have you. So I'm not sure why USACs paint on the ground, which I think could be likened to a map or a design like an architect or soil sampler, who's not an information provider. How about a surveyor? I think the surveyor, the Rosny versus Marnell case is definitely an outlier because there you've got a circumstance where the surveyor has put a warranty promising that the survey is good on the document and you've got no contract, which is really the problem there. You've got injustice from the lack of a contract and a party that's been harmed because they don't have a contractual recourse. So you get back to the scenario where we have here where AT&T has the contractual recourse. You don't have the possibility where an at-fault party can skirt liability altogether because every party can be reached. And the other thing that I think is important to consider here, and certainly address more questions on the lines that we've been on, but the policy consideration here of the Joint Tort Feeser Act, its purpose is to allow joint tort feesers to contribute together to a judgment. And here Lyons and Penner's first affirmative defense in its answer to AT&T's complaint is that AT&T failed to meet its statutory obligations under the act by not appropriately marking its facilities. If Lyons and Penner shows that AT&T didn't appropriately mark its facilities, any portion of fault attributed to that bad locate is going to be deducted. So we don't have, and the Joint Tort Feeser Act states the right of contribution exists only in favor of a tort feeser who's paid more than his pro rata share. So it's no harm, no foul if you guys are in the case. Lyons and Penner is going to pay its pro rata share because it's going to offset the share attributable to any bad locate, should it exist. All right, thank you, counsel. Thank you, Your Honor. Mr. Buell, would you like to log in? If you could start with the last point. Why does it matter if USIC is in the case? Whether they pay the amount of damages that they're liable for, for mismarking this, or whether it's just a set off based upon contributory negligence, what's the difference? The difference there, well, to me, they're critical in the case because they are the information provider. They're critical in the case because they have this duty that comes about by reason of negligent misrepresentation exception. What they're trying to do is extricate themselves out of the case by initial contract. But the real issue here is if they come within that exception, they are subject to liability and tort because the Contribution Act talks about subject to liability and tort arising out of the same injury. And that's what the issue is. They are a pure information provider. They are subject to liability and tort. Hence, they're subject to being in a suit based on a contribution theory. One thing I'd like to discuss is facts in the Falwell and the Plohde case are different than the facts that we have here, completely different. The locating was done in-house in both Falwell and Plohde. Here, we have a third party who's called an authorized locating contract. They're doing the locating. And they're supplying the information based on the information based upon the location that they're doing. And I think that when you look at the Falwell and the Plohde cases, how the court had to apply section 10 and find that the in-house locator was an information provider by virtue of the exception of the Mormon action so that they could apply section 10 of the act. So I think the value of Falwell and Plohde is that those courts recognize that the supplying of information of the location of underground facilities falls within the Mormon exception. And you have to understand also that section 11H of the act includes three classes of persons, employees, agents, and authorized locating contractors. We talk of contractor, of owners and operators, and that section is basically to take these people out of being subject to penalties for eradicating marks. The purpose of the act is to provide the information. I mean, that's what the whole overall purpose is, to preserve utility services. You would agree that there is a clear, cognizable contract claim that AT&T could make against USCISU? They could make a contract claim. It's there, right? It's there. Okay, so let me ask a follow-up question because it is there. And we have language in cases like the appellate court case in Fairchurch and some other cases that talk about where there is such a clear, cognizable claim that you can't sue and tort. But the thing is, this is an issue which goes to the analytical issues. You can have contracts, but not everything is always covered in a contract. Things occur outside the contract. Well, what's the extra contractual duty, you know, i.e. Congregation of the Passion, here that you're alleging was breached between USIC and AT&T? The duty that they have arises under the negligent misrepresentation exception. That's a duty that they have. It's a common law duty. It's outside the contract. That duty remains no matter what's provided in the contract. But there's the exact same duty in the contract to mark those things properly.  Well, here, we don't have the contract before us. We're arguing that they have a contract. They do have a contract, but we don't have the language of the contract before us. The contract is not in the record. They have a contract, but there's common law duties under the negligent misrepresentation exception. But if you have a contract and there are common law duties, don't you still go by the contract? No, because you still have to comply with the common law duties. But what if the common law duties are the same duties that are in the contract? The thing is, at this point, there would be guess or speculation because we don't have the contract. The court didn't have the contract? No. Is it a real far stretch to say that it's a duty under this contract to accurately mark these locations? Yes, because... That's a stretch. It's a stretch because... Really, what are they doing then? Just basically, I'm going to hire you to just put some markings on the ground, you know, play tic-tac-toe on the sidewalk, and then I'll pay you. And then if you screw up, the duty's out. In torts, it's negligence. It has nothing to do with this contract. I mean, isn't it at least an implied condition? I'm sure if we had the contract, it wouldn't be implied. But at least an implied condition or duty to mark those things accurately. No. Section 10 of the Act talks about the approximate location. Approximate doesn't mean accurate. That means somewhat near, and that's when they talked about a zone of tolerance, 18 based on the approximate location. So it's not accurate. It's not in a contract that you have to do this accurately. The statute says approximate location, 18 inches on each side of the marker, or fly wherever it may be. No. All right. We'd like to thank the attorneys for their arguments today, and certainly some interesting issues before us. The case will be taken under advisement, and we'll take a short recess. Thank you.